**Olan WHITEHEAD, Movant,**

v.

**Drexell R. DAVIS, Treasurer of the Commonwealth of Kentucky and Custodian of the Uninsured Employers' Fund; Arnold Knuckles; Coal Fuels, Inc.; Underwriters Safety and Claims; et al., Respondents.**

**Arnold KNUCKLES, Movant,**

v.

**COAL FUELS, INC., Respondents.**

Supreme Court of Kentucky.

July 3, 1985.

W. Henry Lawson, Forester, Forester, Buttermore & Turner, Garrett Fowles, Cawood & Fowles, Pineville, for movant Olan Whitehead.

Sherry B. Holstein, Goss, Douglass & Chappel, Eugene Goss, Harlan, for movant Arnold Knuckles.

David L. Armstrong, Atty. Gen., Frankfort, Dana C. Stinson, Asst. Atty. Gen., for respondents.

David E. Roseberry, Louisville, for Coal Fuels, Inc.

Armer H. Mahan, Louisville, for Underwriters Safety & Claims.

## OPINION OF THE COURT

Discretionary review was granted herein to examine the function, duty and liability of the Uninsured Employers' Fund in those instances in which an employer has qualified as a self-insurer under the provisions of KRS 342.340, but which employer has become insolvent, with insufficient bond, at the date of an award by the Workers' Compensation Board. We affirm the Court of Appeals, adopting the opinion of Judge Howerton as the opinion of this court, with certain additions.

"Knuckles and Whitehead were employees of Coal Fuels, Inc. Coal Fuels was a qualified, self-insured employer in accordance with KRS 342.340. Both employees were injured while employed by Coal Fuels, and they filed claims with the board. Both claims were settled on September 24, 1979.

"Coal Fuels became insolvent and was unable to pay either employee the amount agreed to in the settlement. The employees moved to reopen their claims and to join additional defendants, including the fund. The motions were granted, but the board determined that the fund was not liable to the employees, and the employees appealed to the Harlan Circuit Court. The trial court reversed the board's decision and held that, '[t]he humanitarian purpose of the fund is to provide compensation for the employee where the employer has failed to provide compensation.' The court gave a liberal interpretation to the statute and decided that although Coal Fuels was accepted by the board as self-insured and had posted the required $25,000 bond, it was in fact insolvent and inadequately insured. The court found that the employees were in virtually the same position as an employee of a defaulting 'uninsured employer.'

"KRS 342.340 requires that:

(1) Every employer ... shall either insure and keep insured his liability for compensation ... or shall furnish to the board satisfactory proof of his financial ability to pay directly the compensation in the amount and manner and when due as provided for in this chapter. In the latter case the board shall require the deposit of an acceptable security, indemnity or bond to secure to such an extent as the board directs the payment of compensation liabilities as they are incurred.

Coal Fuels did not provide insurance to satisfy its liability for compensation, but it was approved by the board as a self-insured employer. An examiner recommended a $1,000,000 bond, but the board qualified Coal Fuels as self-insured upon deposit of a $25,000 bond. In deciding this case, the board directed that the $25,000 be divided equally between Knuckles and Whitehead.

"KRS 342.760 provides for the Uninsured Employers' Fund. Subsection (1) reads in part, '[t]here is hereby authorized in the state treasury an uninsured employers' fund for the purpose of making payments in accordance with the provisions of subsection (4)....' Subsection (4) provides that ' ... compensation thereafter shall be paid from it when there has been default in the payment of compensation due to the failure of an employer to secure payment of compensation as provided by this chapter.' This chapter requires an employer to secure payment under the terms of KRS 342.-340.

■ "All parties in this case admit that Coal Fuels was a qualified, self-insured employer at all times relevant to these actions. As such, we disagree with the trial court that the fund is a guarantor that all benefits will be paid for work-related injuries suffered in the Commonwealth. The statutory language is plain enough, and it is applicable only to uninsured situations. Other sections of KRS 342.760 indicate that the fund is to have limited ability and appli-

---

cation. Subsection (3) provides for initial funding in the amount of $100,000. Subsection (6) provides that if the assets fall below $50,000, 'the board, with approval of the secretary of the finance and administration cabinet and commission of labor, may transfer sufficient moneys from the maintenance fund to the uninsured employers' fund....' Subsection (5) also provides that the attorney general shall provide counsel from his staff and, '[n]ecessary expenses for this purpose including salaries of said staff or special counsel shall be borne by the fund.' There is simply no indication of any legislative intent to require the state, through the fund, to guarantee payment of worker compensation benefits from defaulting employers, insolvent insurance companies, and underinsured employers. KRS 342.760 does not apply when an employer has satisfied KRS 342.340 by providing a workers' compensation insurance policy or by being certified by the board as a qualified, self-insured employer.

"We are sympathetic with the problem of Knuckles and Whitehead, but we must hold that the fund is not liable to them in this situation. It is unfortunate that the board did not maintain closer control over Coal Fuels in supervising the self-insured employer. It is apparent now that the $25,000 bond was inadequate, but it was clearly within the discretion of the board to fix the required amount.

"Some states have provided a fund to assist workers in obtaining payment from problems due to insolvency. Oregon and Michigan are examples. *See* ORS 656.614 and MCL 418.501. Kentucky, however, has given no indication that the fund or any other agency shall be liable to injured workers when they are unable to obtain payment on their claims due to insolvency or reasons other than the employer was 'uninsured.'

"Having determined that the fund is not liable in this situation, we have no reason to determine whether it was improperly joined as a party in the subsequent proceeding."

Of additional persuasion is the wording of KRS 342.770, which statute relates to the filing of a lien in favor of the Fund against the noncomplying employer, and the wording of KRS 342.790, relating to the amount of the award. KRS 342.770, in applicable part, reads:

.(1) Upon the filing of a claim the director shall ascertain whether the employer.... has secured [meaning insured] payment of compensation by either securing [meaning obtaining] insurance coverage or qualifying as a self-insurer pursuant to KRS 342.340. Upon determination that any employer has failed to comply with the provisions of KRS 342.340, the director shall......

Thus it is obvious that the liability of the Uninsured Employers' Fund arises from failure of the employer to *comply*, not from the failure to *pay*. To hold otherwise would deny finality to any award should the employer or his insurance carrier become insolvent before final payment.

The Court of Appeals is affirmed; the judgment of the Harlan Circuit Court is reversed, and this case is remanded thereto with directions to reinstate the opinion and award of the Workers' Compensation Board.

All concur.